IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL SULLIVAN,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 11-7305 |
| **TEMPLE UNIVERSITY,** | : | |
| Defendant. | : | |

**DuBois, J.**                                                                                                               **March 5, 2013**

**M E M O R A N D U M**

## I. INTRODUCTION

Plaintiff Daniel Sullivan filed suit against his former employer, Temple University, under the Age Discrimination in Employment Act ("the ADEA") and the Pennsylvania Human Relations Act ("the PHRA"). His claims are premised on age discrimination and retaliation. Temple has moved for summary judgment, which Sullivan does not oppose with respect to the retaliation claim. For the reasons that follow, the Court grants the motion to the extent Sullivan's claims are based on retaliation and denies the motion to the extent his claims are based on age discrimination.

## II. BACKGROUND[1]

This case arises out of defendant Temple University's failure to hire Daniel Sullivan as the Community Oral Health Coordinator at Temple's Dental School. Alexia Clarke was chosen for the position instead. At the time Clarke was hired, she was approximately thirty years old

---

[1] As required on a motion for summary judgment, the facts set forth in this Memorandum are presented in the light most favorable to plaintiff, the non-moving party.

and Sullivan was sixty years old. (Clarke Dep. at 7; Sullivan Dep. at 61.)

      A.      <u>Sullivan's Employment at Temple</u>

For almost six years, Sullivan worked as a Project Manager at the Dental School. (Defendant's Statement of Material Facts ("Def. SOMF") at ¶ 17.) He had various responsibilities in this role: he provided direction for development of clinics; he supervised all grant-related activities including the budget and personnel; he coordinated clinic operations; and he prepared management reports. (<u>Id</u> at ¶ 21.) According to Sullivan, the position was not limited to these tasks, and his responsibilities evolved over time. (Sullivan Dep. at 73-74.)

      B.      <u>Sullivan's Position is Eliminated</u>

Sullivan's salary was derived entirely from grant funds, and eventually, the funding for the grant ended in August, 2007. (Def. SOMF at ¶ 26.) Nevertheless, Temple retained Sullivan as Project Manager by using funds from open faculty positions to pay his salary. (<u>Id.</u> at ¶¶ 27, 29.) Approximately a year later, Temple hired Dr. Amid Ismail as Dean of the Dental School. (<u>Id.</u> at ¶ 30.) Dean Ismail decided to eliminate Sullivan's position and create a new position that would encompass Sullivan's duties. (<u>Id.</u> at ¶¶ 32-33.)

With Sullivan's job ending, his supervisor, Dr. Ivonne Ganem, needed someone to take over Sullivan's responsibilities until the new position was filled. (<u>Id.</u> at ¶ 45.) At the request of either Dean Ismail or Dr. Ganem, Sullivan began training Alexia Clarke to take over his duties. (<u>Id.</u> at ¶ 46.) Clarke was Dean Ismail's research assistant and was eventually chosen for the new position. (<u>Id.</u> at ¶¶ 46, 62, 101.)

      C.      <u>The Community Outreach Coordinator Position</u>

Before Sullivan's employment ended, Temple posted the new position, entitled

Community Outreach Coordinator. (Id. at ¶ 49.) Four days before the posting, Dean Ismail and Dr. Ganem met. (Ganem Dep. at 176-77.) Dr. Ganem's notes from the meeting state, "Dan will not get the job. Alexia – will be coordinating all projects and outreach. Alexia will be in charge of outreach scheduling and community engagements." (Def. SOMF at Ex. 27.)

Forty-six people applied for the position, including Sullivan. Sullivan was selected by Human Resources as one of four candidates for final consideration. (Id. at ¶ 59.) However, he was not among the two who received an interview. (Id. at ¶ 60.) Alexia Clarke was eventually offered the position. (Id. at ¶ 62.)

Sullivan discussed his unsuccessful application with Associate Vice President for Human Resources Harry Young. (Id. at ¶ 65.) Young asked his colleague Karen Ward to review the position and the search process. (Id. at ¶ 68.) Both Ward and Young concluded that Community Outreach Coordinator position was similar enough to Sullivan's Project Manager position that he should have been given an interview. (Id. at ¶ 69.) Both testified at their depositions that they believed he was qualified for the job. (Young Dep. at 53; Ward Dep. at 25.) Eventually, Clarke's offer was rescinded and the search process was restarted. (Id. at ¶ 74.)

    D.    <u>The Community Oral Health Coordinator Position</u>

The position was posted again, this time called the "Community Oral Health Coordinator." (Id. at ¶¶ 75-76.) According to the posting, which was prepared in part by Dean Ismail, a "[d]emonstrated ability to conduct literature reviews" was a required skill. (Id. at ¶ 77; Ex. 20.) Dean Ismail also created questions to be used in the interview process. (Id. at ¶ 77.) Among other questions, the applicants were to be asked about running focus groups and developing questionnaires. (Resp., Ex Q at 3.) Conducting literature reviews and running focus

3

groups are skills on Clarke's resume. (Def. SOMF at Ex. 14.) Additionally, Clarke's master's project involved developing questionnaires. (Clarke Dep. at 12-13.) However, in the year and a half Clarke worked as the Community Oral Health Coordinator, she never conducted literature reviews, ran focus groups, or developed questionnaires. (Id. at 36, 39, 41.)

Sixty-seven people, including Sullivan, applied for the new job. (Def. SOMF at ¶¶ 85.) Sullivan was selected as one of five people to be interviewed by a committee. (Id. at ¶¶ 85-87.) The committee recommended Alexia Clarke and one other candidate, Asha Baldon, for the position. (Id. at Ex. 26.) Dean Ismail offered the job to Clarke, and she accepted. (Id. at ¶ 101.)

### E. Procedural History

Sullivan sued Temple under the the ADEA and the PHRA. His claims are based on age discrimination and retaliation. Temple moved for summary judgment with respect to both theories. Sullivan, in his response, "does not contest entry of judgment on his retaliation claims, and proceeds solely as to age discrimination." (Resp. at 3.) Thus, the Court will address only the age discrimination claim in this Memorandum.

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law" and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

The ADEA[2] prohibits age discrimination in employment against any person over the age of forty. 29 U.S.C. §§ 623(a)(1), 631(a). ADEA claims are subject to the three prong burden-shifting analysis originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Plaintiff bears the burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. If plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for the adverse employment action. See id. This burden is one of production, not persuasion. Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009). If defendant offers a legitimate nondiscriminatory reason, in order to survive summary judgment, plaintiff must submit evidence "to demonstrate that the employer's proffered rationale was a pretext for [ ] discrimination." Id. Notwithstanding this burden-shifting

---

[2] This analysis applies with equal force to Count II, plaintiff's PHRA age-discrimination claim, because the same legal standard applies. Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

framework, plaintiff always bears the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799 n.10 (3d Cir. 2003).

    A.    Prima Facie Case Under the ADEA

A plaintiff makes out a prima facie case of age discrimination under the ADEA by showing: (1) that he is over 40; (2) that he is qualified for the position in question; (3) that he suffered an adverse employment decision; and (4) that he was replaced by a sufficiently younger person to permit an inference of age discrimination. Smith, 589 F.3d at 689. Temple challenges only the second and fourth elements.

With respect to the second element, Associate Vice President for Human Resources Harry Young and his colleague Karen Ward both testified at their depositions that they believed Sullivan met the qualifications of the position. This evidence could lead a factfinder to reasonably conclude that Sullivan was qualified. Thus, the second element of the prima facie case is satisfied.

"[A]n ADEA plaintiff may establish the fourth element of the McDonnell Douglas test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination." Maxfield v. Sinclair Intern., 766 F.2d 788, 793 (3d Cir. 1985). In Maxfield, the Third Circuit determined that "replacement by an employee more than 20 years younger was sufficient to satisfy this test." Id. In this case, Sullivan was replaced by someone thirty years younger. This satisfies the fourth element of the prima facie case.

The Court thus concludes that Sullivan has made out a prima facie case of age discrimination under the ADEA, satisfying the first step of the McDonnell Douglas framework.

6

The Court will next address the second step, whether Temple has offered a legitimate, nondiscriminatory reason for not hiring Sullivan.

  B.  Legitimate Nondiscriminatory Reason

Temple asserts that it selected Clarke because she was more qualified than Sullivan. That assessment is based on Clarke's experience in community health including providing early intervention service to HIV positive clients, counseling clients, distributing safer sex materials and information, and her Master's Degree in Public Health. (Mot. at 23-24; Def. SOMF at Ex. 14.) This satisfies defendant's "relatively light" burden to "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." See Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

  C.  Pretext

At the third step of the McDonnell Douglas framework, plaintiff must show that the employer's proffered legitimate, nondiscriminatory reason for the adverse employment action is pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981). To establish pretext, a plaintiff has two options. He must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Sullivan' relies on the first method. This means of showing pretext is to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller, 130 F.3d at 1109 (quoting Fuentes, 32 F.3d at 765). It is not enough that the employer's decision was "wrong or mistaken;" rather, a plaintiff must demonstrate that "the employer's articulated reason was . . . so plainly wrong that it cannot have been the employer's real reason." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999) (internal quotations omitted).

"[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." Fuentes, 32 F.3d at 764; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

On the present state of the record, a factfinder could reasonably disbelieve Temple's nondiscriminatory reason for selecting Clarke – Dean Ismail's research assistant – over Sullivan. Dr. Ganem met with Dean Ismail four days before the initial Community Outreach Coordinator position was posted. Her notes from that meeting state, "Dan will not get the job. Alexia – will be coordinating all projects and outreach. Alexia will be in charge of outreach scheduling and community engagements." Moreover, Sullivan was asked to train Clarke before Clarke was chosen for the position. Finally, some aspects of the job positing and the interview questions, written by Dean Ismail, matched Clarke's skills – the posting stated that an ability to conduct literature reviews was a required skill, and some of the interview questions concerned running

focus groups and developing questionnaires. However, in the year and a half Clarke worked as the Community Oral Health Coordinator, she never conducted literature reviews, ran focus groups, or developed questionnaires.

From these facts, a jury could reasonably conclude that Dean Ismail did not select Clarke because she was better qualified, but rather chose her before the official selection process had even begun and thus before he could properly compare her to other candidates. Sullivan has therefore met the third step of the McDonnell Douglas analysis.

## V.     CONCLUSION

The evidence presents genuine disputes of material fact as to whether Temple failed to hire Sullivan for the Community Oral Health Coordinator because of his age. Thus, the Court denies the motion for summary judgment to the extent Sullivan's claims are based on age discrimination. Sullivan "does not contest entry of judgment on his retaliation claims, and proceeds solely as to age discrimination." (Resp. at 3.) The Court therefore grants Temple's motion to for summary judgment to the extent Sullivan's claims are based on retaliation.

An appropriate order follows.